E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0306
    Facsimile: (213) 894-2927
    E-mail:    andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-CR-00331-AB-5 |
|        Plaintiff, | SUPPLEMENTAL BRIEF IN SUPPORT OF GOVERNMENT'S REQUEST FOR DETENTION OF SHUYI XING |
|          v. | |
| YANG SONG,<br>JUNWEI JIANG,<br>ZHENGXUAN HU,<br>YUSHAN LIN, and<br>SHUYI XING, | |
|        Defendants. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Andrew M. Roach, hereby files its Supplemental Brief in Support of the Government's Request for Detention of Shuyi Xing.

//

//

//

1      This brief is based upon the attached memorandum of points and

2  authorities, the files and records in this case, the evidence

3  presented at the continued detention hearing on June 3, 2024, and

4  such further evidence and argument as the Court may permit.

5  Dated: June 5, 2024              Respectfully submitted,

6                                   E. MARTIN ESTRADA
                                    United States Attorney
7
                                    CAMERON L. SCHROEDER
8                                   Assistant United States Attorney
                                    Chief, National Security Division
9

10                                      */s/ Andrew M. Roach*
                                    ANDREW M. ROACH
11                                  Assistant United States Attorney

12                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3       The government hereby submits its supplemental brief following

4 the continued detention hearing of defendant Shuyi Xing on June 3,

5 2024.  For the reasons below, the government believes it has

6 established that defendant presents "a serious risk that [he] will

7 flee" to trigger a detention hearing under § 3142(f)(2)(A), and that

8 "no condition or combination of conditions will reasonably assure the

9 appearance of [defendant] as required" under § 3142(e)(1).

10       Accordingly, defendant should be detained.

11 **II.    LEGAL STANDARDS**

12      **A.    The Burden to Trigger a Detention Hearing Under**

13             **§ 3142(f)(2)(A) for "Serious Risk" of Flight**

14       The burden to trigger a detention hearing under § 3142(f) is not

15 articulated in the statute nor clearly defined in the caselaw.  As

16 far as the government has found, and as confirmed by one district

17 court, "[i]t appears that only the Second Circuit has identified an

18 evidentiary standard for establishing a § 3142(f) category.  No other

19 Circuit has addressed this issue." <u>United States v. Subil</u>, No. 2:23-

20 CR-00030-TL, 2023 WL 3866709, at *2 n.1 (W.D. Wash. June 7, 2023).

21 But as explained below, the Second Circuit caselaw articulating this

22 standard is of questionable reliability given its limited analysis.

23 Based on the government's review of the caselaw, the government has

24 identified two views of the evidentiary standard to trigger a

25 detention hearing: (1) preponderance of the evidence or (2) a

26 reasonable belief or basis.

27       After reviewing additional caselaw since the Friday and Monday

28 hearings, government counsel recognizes that most of the caselaw

appears to apply a preponderance of the evidence standard to trigger a detention hearing under 18 U.S.C. § 3142(f).  See, e.g., Subil, 2023 WL 3866709, at *2 ("[D]efendant is eligible for a hearing only if the Government shows, by a preponderance of the evidence, that the case falls into one of the categories listed in 18 U.S.C. § 3142(f).") (citing inter alia United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988) ("[Court] must first determine by a preponderance of the evidence, . . . that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice.")); United States v. Figueroa-Alvarez, 681 F. Supp. 3d 1131, 1138 (D. Id. 2023) (also citing Friedman, 837 F.2d at 49).

The government submits that this authority, while more common, employs reasoning that is not particularly persuasive.  First and foremost, most of these cases did not seriously consider the standard to trigger a detention hearing and the issue does not appear to have been litigated by the parties.  Rather they assumed this was the standard without any analysis.  This questions the reliability of such authority.  See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").  In this regard, most of these cases cite the Second Circuit case of Friedman, which relied on United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987), to state the standard is a preponderance of the evidence in order to trigger a detention hearing under § 3142(f).  Id. at 49.  The problem is that Jackson simply stated that "[t]o order detention, the court must find by a

2

1    preponderance of the evidence that the defendant presents a risk of
2    flight, and, if it finds such a risk, that no conditions could
3    reasonably assure the defendant's presence at trial." Id. at 5.  It
4    did not engage in any in-depth analysis.  And the case Jackson cited
5    for this authority, United States v. Berrios-Berrios, 791 F.2d 246,
6    250 (2d Cir. 1986), appears to not have considered the standard for a
7    hearing at all.

8         The second issue is that these cases usually conflate the
9    standards of preponderance of the evidence for risk of nonappearance
10   to detain a defendant under § 3142(e) with the standard of serious
11   risk of flight to trigger a detention hearing under § 3142(f).
12   Figueroa-Alvarez, 681 F. Supp. 3d at 1137-38 (noting "courts
13   interpreting the Act have conflated risk of flight with risk of non-
14   appearance").  As a result in many cases, the court simply recites
15   the standard for detention as the standard for a detention hearing.
16   But these cases do not address the standard to trigger the hearing in
17   the first place, they simply use "risk of flight" for shorthand for
18   "reasonably assure appearance."  This creates unnecessary confusion.

19        Most of the caselaw holding a preponderance of the evidence to
20   trigger a detention hearing suffers from these two flaws.  Indeed,
21   defendant cites United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir.
22   1991) for the proposition that the standard is a preponderance of
23   evidence for a detention hearing, but Gebro does not say that either.
24   It merely recites the standard for detention: "government bears the
25   burden of showing by a preponderance of the evidence that the
26   defendant poses a flight risk, and by clear and convincing evidence
27   that the defendant poses a danger to the community."  Id.  That, of
28   course, does not answer the question about the standard to trigger a

detention hearing in the first instance.  Most of the other authority
cited in defendant's opposition makes this same mistake.  See Dkt. 20
at 6.

The other line of authority, which the government concedes
appears to be less common based on its compressed review of the
caselaw, hold that the threshold to trigger a detention hearing under
§ 3142(f) is much lower.  One district court within the Ninth Circuit
has observed that, "[b]ecause of the immediacy with which the
[detention] hearing should happen, the government or Court need only
express their belief that the defendant poses a serious risk of
flight for the hearing to commence." United States v. White, No.
4:18-mj-71386-MAG, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018);
see also United States v. Powers, 318 F. Supp. 2d 339, 341 (W.D. Va.
2004) (explaining that the standard to trigger a detention hearing
occurs when the "United States or the court believes there is a
serious risk of flight").  Moreover, because the standard of proof to
detain a defendant on the grounds of risk of non-appearance is by a
preponderance of evidence, see United States v. Motamedi, 767 F.2d
1403, 1406 (9th Cir. 1985), it follows that the standard of proof to
demonstrate the government's entitlement to a hearing based on flight
risk must necessarily be lower than a preponderance.  In sum, "the
belief that entitles the government to the detention hearing is
ultimately a very low threshold." White, 2018 WL 5291989, at *4.

The government submits the preponderance of evidence standard is
too high and that this lower standard or something similar, i.e., a
reasonable basis, probable cause, or prima facie case is the more
appropriate standard to determine the threshold question of holding a
detention hearing.  This is consistent with the government's

4

threshold showing in many similar situations, such as indicting
defendants, and there is good reason for this lower burden given the
additional safeguard on defendant's liberty, the preponderance of the
evidence or clear and convincing standard that is applied once a
detention hearing is held.  Moreover, as the Court mentioned at
Monday's hearing, it seems to defy the statutory surplusage canon to
find the government must show that defendant poses a serious risk of
flight by a preponderance of the evidence to hold a hearing because
that would necessarily subsume the finding by a preponderance of the
evidence that there are no reasonable conditions which would
reasonably assure the defendant's appearance.  But see Figueroa-
Alvarez, 681 F. Supp. 3d at 1139 n.5 (rejecting government's
"reasonable position that applying a preponderance standard at the
gatekeeping stage would render a subsequent detention hearing
superfluous" because "a detention hearing involves more than just
demonstrating risk of non-appearance" and includes consideration of
conditions).

Regardless of whether the standard to hold a detention hearing
is preponderance of the evidence or something lower, the caselaw is
clear.  It is not a clear and convincing as defense claimed.  See
Dkt. 20 at 6-7.  The government is aware of no case holding that and
neither is defense counsel apparently, given the inability to cite on
point authority.  In any event, assuming arguendo, that the standard
is preponderance, the government has met that burden.

**B.  The Court Can Consider All Relevant Evidence to Determine If Defendant Presents a "Serious Risk" of Flight, Including Criminal Conduct**

The Court can consider all evidence to determine if defendant "poses a serious risk that such person will flee" to trigger a detention hearing under § 3142(f)(2)(A).  This makes logical sense as the Court is merely conducting a threshold inquiry.  If it determines that a detention hearing is warranted, then the Court is allowed to consider almost everything about the defendant under § 3142(g), including a defendant's "history and characteristics," "character," "past conduct," "criminal history," etc.  § 3142(g).  There is no principled reason why the Court would be limited.

While the Court can consider all conduct to make the threshold determination about a detention hearing, the government readily concedes that a detention hearing cannot be triggered under § 3142(f) based on dangerousness to the community alone.  "This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)." United States v. Twine, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness."); see also United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988) (evidence of defendant's plans to kill someone did not justify detention when charged offenses involved white-collar crimes not covered by section 3142(f)(1); but case remanded to see if the person whom defendant allegedly intended to harm was a "prospective witness" under section 3142(f)(2)(B).  The government must show the conditions of § 3142(f) are first met to hold a detention hearing.  But the law places no limitation on what the Court can consider in determining whether a

1  person poses a "serious risk of that such person will flee" to
2  trigger a detention hearing under § 3142(f)(2)(A).

3      Defendant argues that the Court cannot consider defendant's
4  criminal conduct or alleged conduct in determining whether defendant
5  poses a "serious risk that such person will flee."  In doing so,
6  defense counsel repeatedly cited Ploof, 851 F.2d 7, at the detention
7  hearing to argue that the Court cannot consider other criminal
8  conduct in this fraud case.  But that is not the law and Ploof does
9  not stand for that.

10      Ploof involved a defendant indicted for fraud, in addition to a
11 pending complaint filed against him for drug offenses.  The lower
12 courts detained defendant based on defendant's threats and serious
13 plans to kill the husband of his girlfriend.  Id. at 8.  In deciding
14 the threshold question of a detention hearing, neither of the lower
15 courts based their orders of detention on the drug-offense or
16 serious-risk-of-flight prongs under § 3142(f)(1)(C) or (f)(2)(A).
17 Id. at 10.  This left the remaining prong of a "serious risk" that
18 defendant would obstruct justice under § 3142(f)(2)(B), which the
19 government invoked for a detention hearing.  Id.  The district court,
20 however, did not find a serious risk that defendant would obstruct
21 justice, and rather decided that defendant was to be detained based
22 on the danger to community.  Id.

23      The Third Circuit found this error because the lower courts did
24 not find the threshold issue of what permitted a detention hearing in
25 the first place:  "Congress did not intend to authorize preventive
26 detention unless the judicial officer first finds that one of the
27 § 3142(f) conditions for holding a detention hearing exists." Ploof,
28 851 F.2d at 11.  Importantly, however, the Third Circuit held that a

detention hearing could be warranted under the obstruction-of-justice prong under § 3142(f)(2)(B) if the person who defendant threatened to kill was a material witness, as that would satisfy the obstruction prong.  Id.  And the Third Circuit ordered reconsideration of detention and specifically, whether, based on the evidence, there was a serious risk defendant will engage or attempt to engage in the conduct set forth in § 3142(f)(2)(B).  Id. at 12.

A plain reading of Ploof dispenses with defense counsel's argument.  It holds that the Court can consider defendant's other conduct, even uncharged, alleged criminal conduct, to determine the threshold inquiry under § 3142(f)(2).  The Court just needs to consider that evidence as part of its determination if a § 3142(f) prong has been met.  And here, the government would submit that the additional alleged criminal conduct creates a heightened risk that defendant will flee.

**III. ARGUMENT**

Defendant Shuyi Xing poses a serious risk of flight to trigger a detention hearing under § 3142(f)(2)(A).  Regardless of whether the standard to trigger that hearing is a preponderance of the evidence or something lower, as the government submits is the more logical reading of the statute, either standard is clearly met here.

As to the threshold inquiry of a detention hearing, defendant Xing is a foreign national with significant ties to China, including co-conspirators and family members living there as well as a history of sending large wire payments to China, as evidenced by the

8

1  proffered bank statements at the detention hearing.  <u>See</u> Ex. 3 at 8.[1]

2  Within the past year and half, defendant's bank accounts received

3  over a million dollars in suspicious and suspected fraudulent wires,

4  much of which went to China, leaving hundreds of thousands of dollars

5  unaccounted.  Defendant is now charged with serious crimes and is

6  alleged to have committed serious other ones, e.g., money laundering

7  of wire fraud proceeds.  This alone shows that defendant has motive

8  (to avoid significant jail time) and means (hundreds of thousands of

9  dollars) to flee if so chooses and is provided the opportunity.  This

10 is what makes this case far different than an ordinary garden variety

11 risk of flight that every non-citizen-defendant presents.  <u>See</u>

12 <u>Figueroa-Alvarez</u>, 681 F. Supp. 3d at 1146 (non-citizen-defendant did

13 not pose a serious risk of flight, and thus detention hearing was not

14 warranted in illegal reentry case because defendant had little

15 incentive to flee, defendant had limited criminal history, defendant

16 faced sentence of zero to six months in prison, and there was no

17 indication defendant had access to financial resources to enable his

18 flight).

19      Beyond that there is the question of defendant's character and

20 trustworthiness to U.S. Pretrial Services and this Court.

21 Defendant's disclosures to U.S. Pretrial Services raise many

22 questions.  Defendant's reported work history omitted a purported

23 real estate company in his name, one that he reported made

24 significant money on bank applications.  He also failed to disclose

25 bank accounts which received significant sums of suspected fraudulent

26 _____

27      [1] The exhibit references are to the paper copies that the
   government proffered at the detention hearing.  The government can
28 email these exhibits to the Courtroom Deputy Clerk if the Court
   desires.

proceeds.  That defendant failed to disclose this to U.S. Pretrial Services shows a lack of candor to the Court with respect to his finances and employment, and is further evidence of a serious risk of flight.  Finally, a large amount of cash ($160,000) was found in the home that he shared with co-conspirators.  This is an example of the unaccounted-for cash that gives defendant the means to flee if given the opportunity.  The totality of all of this shows that defendant presents a serious—-that is, more than the average—-risk of flight to trigger a detention hearing.

Turning to the issue of detention, the same issues that make defendant a serious risk of flight show that no conditions can reasonably assure his appearance.  Defendant's ties to China, lack of candor to U.S. Pretrial Services, questionable finances (and other potential criminal activity), and large sums of unaccounted-for money, all show that he poses a risk of nonappearance.  For those reasons, the government respectfully requests detention.

In the alternative, if the Court determines that bail is appropriate, the government submits that bail must be secured by defendant's real property and that the Court should hold a <u>Nebbia</u> hearing under § 3142(g)(4) given the allegations in the indictment and defendant's recent suspected fraudulent activity.

**IV.    CONCLUSION**

The government respectfully requests that this Court find that it has established that defendant presents "a serious risk that [he] will flee" to trigger a detention hearing under § 3142(f)(2)(A), and that "no condition or combination of conditions will reasonably assure the appearance of [defendant] as required" under § 3142(e)(1). Accordingly, defendant should be detained.