E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0306
     Facsimile: (213) 894-2927
     E-mail:    andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-CR-331-AB-5 |
|---|---|
| Plaintiff, | GOVERNMENT'S APPLICATION PURSUANT TO 18 U.S.C. § 3145(a)(1) FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE OF DEFENDANT SHUYI XING |
| v. | |
| YANG SONG, JUNWEI JIANG, ZHENGXUAN HU, YUSHAN LIN, and SHUYI XING, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Andrew M. Roach, hereby files its Application Pursuant to § 3145(a)(1) for Review/Reconsideration of Order Setting Conditions of Release of Defendant Shuyi Xing (Dkt. 66).

//

//

//

1    This application is based upon the attached memorandum of points

2 and authorities, the files and records in this case, and such further

3 evidence and argument as the Court may permit.

4 Dated: June 21, 2024                Respectfully submitted,

5                                     E. MARTIN ESTRADA
                                      United States Attorney
6
                                      CAMERON L. SCHROEDER
7                                     Assistant United States Attorney
                                      Chief, National Security Division
8

9                                      */s/ Andrew M. Roach*
                                      ANDREW M. ROACH
10                                    Assistant United States Attorney

11                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS............................................3

      A.    The Conspiracy to Defraud Apple.........................3

      B.    Defendant's Arrest and Detention Hearing................3

III.  LEGAL STANDARDS...............................................4

IV.   ARGUMENT......................................................5

      A.    There is No Burden of Proof to Trigger a Detention
            Hearing Under § 3142(f).................................5

      B.    The Government is Entitled to a Detention Hearing
            Based on Its Good-Faith Belief that a § 3142(f)
            Category is Met.........................................9

      C.    The Court Should Find a Detention Hearing is Warranted
            Based on the Government's Motion and Order Defendant
            Detained...............................................15

V.    CONCLUSION...................................................17

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

<u>Cases</u>

<u>Barnhart v. Sigmon Coal Co.</u>,
    534 U.S. 438 (2002) .............................................. 7

<u>Bostock v. Clayton County</u>,
    140 S. Ct. 1731 (2020) ......................................... 14

<u>Caraco Pharmaceutical Laboratories, Inc. v. Novo Nordisk A/S</u>,
    566 U.S. 399 (2012) ............................................. 5

<u>Collins v. Yellen</u>,
    141 S. Ct. 1761 (2021) .......................................... 7

<u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>,
    543 U.S. 157 (2004) ............................................ 11

<u>Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>,
    523 U.S. 26 (1998) .............................................. 6

<u>Mertens v. Hewitt Assocs.</u>,
    508 U.S. 248 (1993) ............................................ 13

<u>Montanile v. Board of Trs. of Nat'l Elevator Indus. Health Benefit
    Plan</u>,
    577 U.S. 136 (2016) ............................................ 13

<u>Republic of Sudan v. Harrison</u>,
    139 S. Ct. 1048 (2019) .......................................... 5

<u>United States v. Berger</u>,
    295 U.S. 78 (1935) .............................................. 9

<u>United States v. Berrios-Berrios</u>,
    791 F.2d 246 (2d Cir. 1986) .................................... 10

<u>United States v. Cook</u>,
    87 F.4th 920 (8th Cir. 2023) ............................... 12, 13

<u>United States v. Dominguez</u>,
    783 F.2d 702 (7th Cir. 1986) ................................... 14

<u>United States v. Friedman</u>,
    837 F.2d 48 (2d Cir. 1988) ..................................... 10

<u>United States v. Jackson</u>,
    823 F.2d 4 (2d Cir. 1987) .................................. 10, 11

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Koenig,
  912 F.2d 1190 (9th Cir. 1990) ..................................... 4

United States v. Melendez-Carrion,
  790 F.2d 984 (2d Cir. 1986) .............................. 9, 12, 14

United States v. Motamedi,
  767 F.2d 1403 (9th Cir. 1985) ..................................... 8

United States v. Powers,
  318 F. Supp. 2d 339 (W.D. Va. 2004) .............................. 9

United States v. Shakur,
  817 F.2d 189 (2d Cir. 1987) ..................................... 10

United States v. Singleton,
  182 F.3d 7 (D.C. Cir. 1999) ...................................... 6

United States v. Subil,
  No. 2:23-CR-00030-TL, 2023 WL 3866709 (W.D. Wash. June 7, 2023) ..13

United States v. White,
  No. 4:18-mj-71386-MAG, 2018 WL 5291989 (N.D. Cal. Oct. 19, 2018) ..9

Statutes

18 U.S.C. § 3142(e)(1).....................................passim

18 U.S.C. § 3142(f)....................................... 1, 9

18 U.S.C. § 3142(f)(2)....................................... 12

18 U.S.C. § 3142(f)(2)(A)................................... 1, 12

18 U.S.C. § 3145............................................ 1

Rules

Fed. R. Crim. P. 5.1........................................ 7

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3

Under 18 U.S.C. § 3142(f), a "judicial officer shall hold a

4 [detention] hearing . . . upon motion of the attorney for the

5 government . . . in a case that involves . . . a serious risk that

6 such person will flee." 18 U.S.C. § 3142(f)(2)(A). No burden of

7 proof is imposed in the statute, nor is there a requirement for any

8 judicial finding, unlike other portions of the Bail Reform Act. The

9 court is required to hold a detention hearing when the government

10 moves for one based on its good-faith belief that the case involves

11 one of the statutory enumerated categories.

12

Notwithstanding the statute's plain text, the magistrate judge

13 interpreted § 3142(f) to require the government to prove by a

14 preponderance of the evidence that defendant poses a "serious risk

15 that [he] will flee" under 18 U.S.C. § 3142(f)(2)(A) before the

16 government can even argue for detention in a detention hearing. In

17 essence, the court required a two-step inquiry where the government

18 must first prove by the preponderance of the evidence that there is a

19 "serious risk that [a defendant] will flee" under § 3142(f)(2)(A) to

20 even qualify for a detention hearing, a hearing in which the

21 government would then need to prove by the preponderance of the

22 evidence (again) that defendant posed a risk of nonappearance under

23 § 3142(e) in order to detain that defendant. If the government fails

24 to meet this first burden by a preponderance, then the government is

25 not entitled to even argue for detention.

26

In this case, by incorrectly imposing a standard of proof that

27 is found nowhere in the statute, the court held that "the government

28 [wa]s not entitled to a detention hearing" in the first place. (Dkt.

66 at 1.) As a result, the court did not consider the government's arguments for detention and the court ordered defendant Shuyi Xing be released on conditions pursuant to § 3142(a), (c).[1]  The court's incorrect reading of § 3142(f) raises a serious question of law that necessitates this Court's review to clarify the law in this case and, potentially, throughout this District.  Neither the statute nor Ninth Circuit caselaw requires the government to meet a preponderance-of-the-evidence standard in the first instance to merely hold a detention hearing under § 3142(f).  (See Dkt. 66 at 8.)  The court recognized this, but nonetheless imposed a new standard here.  This was in error.  Imposing such a standard simply creates a two-step detention hearing in which a court must first "hold[] a hearing to determine whether they need to hold a [detention] hearing," Dkt. 66 at 7.  This serves no practical purpose other than delay, at the expense of a defendant who may remain in custody while the issue is decided.

Therefore, the government respectfully requests that the Court find that the government is entitled to a detention hearing based on its good-faith belief that defendant poses a serious risk that he will flee under § 3142(f)(2)(A).  The Court should then either remand to the magistrate judge or itself determine whether detention is warranted because "no condition or combination of conditions will reasonably assure the appearance of [defendant] as required." 18 U.S.C. § 3142(e)(1).  For the reasons explained below, the government can satisfy that standard here.

---

[1] Those condition were the (1) surrender of his passport, (2) a $100,000 appearance bond secured by his residence in Corona, California, and (3) a host of other standard conditions.  (Dkt. 66 at 16-22.)

## II.   STATEMENT OF FACTS

### A.   The Conspiracy to Defraud Apple

Defendant is charged with a years-long conspiracy to commit wire fraud and mail fraud, aggravated identity theft, wire fraud, mail fraud, and conspiracy to traffic in counterfeit goods for his role in a $12-million counterfeit device fraud against Apple.  See Dkt. 1 (Indictment) at 6–26.  The scheme involved defendant's co-conspirators importing counterfeit Apple devices from China. Defendant, and his co-conspirators, then returned these devices to Apple stores, causing Apple to replace the devices with new devices. Defendant and his co-conspirators would then ship these devices to China and elsewhere.

### B.   Defendant's Arrest and Detention Hearing

Defendant was arrested on May 30, 2024, and had his initial appearance on May 31, 2024.  At the request of defense counsel, the detention hearing was continued to June 3, 2024.

At the June 3, 2024 hearing, defendant challenged the government's entitlement to a detention hearing on the ground that the government had not established a serious risk that defendant will flee to trigger a detention hearing under § 3142(f)(2)(A).  The court heard argument on both the issue of entitlement a detention hearing and the issue of detention.  See Dkt. 31, 38 (minutes of 71-minute detention hearing).  During the hearing the government called a witness and presented three exhibits relating to a separate alleged money laundering scheme that defendant was alleged to have participated in.  This evidence showed that approximately a year ago, over a million dollars of suspected fraudulent wires were deposited

3

1   into defendant's bank accounts and then quickly wired to China, with

2   approximately $400,000 left unaccounted.

3       The court took the matter under submission.  On June 7, 2024,

4   the court issued its order denying detention and ordering defendant

5   released on the following conditions: (1) surrender of his passport,

6   (2) a $100,000 appearance bond secured by his residence in Corona,

7   California, and (3) a host of other standard conditions.  (Dkt. 66 at

8   16-22.)  Relevant to this application for reconsideration, the court

9   held that the government was not entitled to a detention hearing in

10  the first instance because it had not demonstrated that defendant

11  posed "a serious risk that [he] will flee" under § 3142(f)(2)(A) by a

12  preponderance of the evidence.  (Id. at 16.)  The court thus did not

13  consider the substantive question of whether detention was warranted

14  under § 3142(e)(1).  (Id.)  Rather, it concluded that "the government

15  has not established that a detention hearing is warranted under

16  section 3142(f), and thus Defendant must be released on personal

17  recognizance, upon execution of an unsecured appearance bond, or

18  released on a condition or combination of conditions."  (Id.)

19  **III. LEGAL STANDARDS**

20      Review of the magistrate judge's initial release order is de

21  novo.  United States v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990).

22  While the "district court is not required to start over . . . and

23  proceed as if the magistrate's decision and findings did not exist,"

24  the district court "should review the evidence before the magistrate

25  and make its own independent determination whether the magistrate's

26  findings are correct, with no deference."  Id. at 1193.

27

28

1    **IV.  ARGUMENT**

2        **A.    There is No Burden of Proof to Trigger a Detention Hearing**

3               **Under § 3142(f)**

4        The Bail Reform Act of 1984 outlines when the government -- or a

5    court on its own motion -- can move for a detention hearing to

6    consider whether to detain a defendant.  The statute permits

7    detention hearings in three instances, where the "case involves":

8    (1) certain dangerous crimes listed in § 3142(f)(1), (2) "a serious

9    risk that such person will flee," § 3142(f)(2)(A), or (3) a serious

10   risk that such person will obstruct or attempt to obstruct justice,

11   § 3142(f)(2)(B).  Once a detention hearing is held, the court must

12   order detention if "the judicial officer finds that no condition or

13   combination of conditions will reasonably assure the appearance of

14   the person as required and the safety of any other person and the

15   community."  18 U.S.C. § 3142(e)(1).  In this case, the magistrate

16   judge determined that the government was not even entitled to a

17   detention hearing and never analyzed the substantive question of

18   detention under § 3142(e)(1).

19       That was error because the plain text of § 3142(f) imposes no

20   burden of proof on the government to <u>trigger</u> a detention hearing in

21   any of these situations.  This is a legal question of statutory

22   interpretation.  As with all statutory interpretation, the Court

23   should first look to the statute.  "We begin 'where all such

24   inquiries begin: with the language of the statute itself.'"  <u>Republic</u>

25   <u>of Sudan v. Harrison</u>, 139 S. Ct. 1048, 1055 (2019) (quoting <u>Caraco</u>

26   <u>Pharmaceutical Laboratories, Inc. v. Novo Nordisk A/S</u>, 566 U.S. 399,

27   412 (2012)).

28

Section 3142(f) mandates that a "judicial officer **shall hold a [detention] hearing . . . upon motion of the attorney for the Government**" or, in addition to the cases under (f)(2), "upon the judicial officer's own motion." § 3142(f)(2) (bold added). The use of the word "shall" implies a mandatory act, "which normally creates an obligation impervious to judicial discretion." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 27 (1998). In other words, the statute's use of the word "shall" requires that the judicial officer hold the detention hearing upon motion of the government without regard to any particular burden of proof.

There is good reason for not imposing a burden of proof to hold a detention hearing. Congress mandated that the detention hearing "shall be held immediately upon the person's first appearance before the judicial officer," § 3142(f), unless a continuance is requested. And in this District, detention hearings are ordinarily held the same day as a defendant's initial appearance in accordance with the statute. Given that "[t]he decision whether to hold a hearing occurs based on even less information than a decision to detain or release," it follows that the standard to invoke the detention hearing should be much lower. United States v. Singleton, 182 F.3d 7, 12 (D.C. Cir. 1999). "[A] detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish." Id.

Other parts of the statute confirm that no particular burden of proof was imposed to hold a detention hearing. "'[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion

6

1  or exclusion.'" Collins v. Yellen, 141 S. Ct. 1761, 1782 (2021)

2  (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002)).

3  Here, unlike other provisions of § 3142, subsection (f) imposes no

4  particular requirement of a judicial finding or determination to hold

5  a detention hearing.  This is in stark contrast to the other

6  subsections of § 3142 that specifically provide that a judge must

7  exercise discretion and "find[]" or "determine" defendant's release

8  or detention, including a defendant's release on conditions under

9  § 3142(c) ("If the judicial officer determines that . . ."),

10 temporary detention under § 3142(d) ("If the judicial officer

11 determines that . . ."), or detention under § 3142(e) ("the judicial

12 officer finds").

13      The notable exception is subsection (f); it imposes no

14 requirement of judicial finding or a judicial determination to

15 trigger a detention hearing.  In fact, the only references to

16 judicial findings in subsection (f) address findings to support

17 detention on the grounds that defendant poses a danger to the

18 community -- which must be supported by "clear and convincing

19 evidence" -- or the finding required to reopen a detention hearing.

20 § 3142(f).  None of these are related to the burden of proof to hold

21 a detention hearing in the first place, and this is no accident.  See

22 Collins, 141 S. Ct. at 1782.  Had Congress desired to impose a burden

23 on the government, let alone a heightened one, or require judicial

24 findings to trigger a detention hearing in the first place, as the

25 magistrate judge interpreted the statute to require, Congress would

26 have said so, as it has done in many other circumstances.  See, e.g.,

27 Fed. R. Crim. P. 5.1 (requiring magistrate judge to "find[] probable

28 cause" during a preliminary hearing).

The Ninth Circuit's statutory interpretation of the Bail Reform Act in <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir. 1985) is instructive. There, the court held that the appropriate burden of proof for detention based on a defendant's risk of nonappearance was a preponderance of the evidence rather than clear and convincing. <u>Id.</u> at 1406. In finding that Congress must have intended that the risk of nonappearance be governed by a different burden of proof than the statute's "clear and convincing" standard for when a defendant poses a danger to the community, the court looked to another section of the Bail Reform Act, § 3143(a), where "Congress expressly required the defendant to negate both danger to the community and flight risk by clear and convincing evidence." <u>Id.</u> Since Congress knew how to draft the statute to achieve its desired result, and require both there, the court determined "it would have so provided" in § 3142 if "Congress desired to achieve a similar result." <u>Id.</u> The fact that it did not was telling: "We must presume that Congress acts with deliberation, rather than by inadvertence, when it drafts a statute." <u>Id.</u>

Here, the text of § 3142 provides strong evidence that Congress knew how to impose both a requirement that the judicial officer make specific findings regarding a defendant's release or detention, <u>see</u>, <u>e.g.</u>, § 3142(b), (c), and (e), and the appropriate burden of proof for those findings, in the case of detention based on danger to the community, <u>see</u> § 3142(f). Despite knowing this, Congress imposed no requirement with respect to the government's showing to trigger a detention hearing. "The most plausible interpretation for this statutory pattern is that Congress intended the two inquiries to be governed by different standards." <u>Motamedi</u>, 767 F.2d at 1406. This

1  provides strong indication that Congress intended no particular

2  burden on the government to trigger a detention hearing to argue for

3  detention.

4      **B.   The Government is Entitled to a Detention Hearing Based on**

5          **Its Good-Faith Belief that a § 3142(f) Category is Met**

6      Given that the statute imposes no particular burden of proof,

7  the question is what standard, if any, entitles the government to a

8  detention hearing.  The answer is, and other courts have found, that

9  "the government or Court need only express their belief" that a valid

10  grounds under § 3142(f) exists for a detention hearing.  United

11  States v. White, No. 4:18-mj-71386-MAG, 2018 WL 5291989, at *4 (N.D.

12  Cal. Oct. 19, 2018); see also United States v. Powers, 318 F. Supp.

13  2d 339, 341 (W.D. Va. 2004) (explaining that the standard to trigger

14  a detention hearing occurs when the "United States or the

15  court believes there is a serious risk of flight").  The good-faith

16  belief requirement is appropriate here because "[e]very lawyer has an

17  obligation to file pleadings only in a good-faith belief that valid

18  grounds exist for the relief sought" and this "obligation . . .

19  should weigh heavily with those exercising the power of public

20  prosecution."  United States v. Melendez-Carrion, 790 F.2d 984, 993

21  (2d Cir. 1986) (citing United States v. Berger, 295 U.S. 78, 88

22  (1935)).

23      The magistrate judge, however, rejected the government's

24  reasoned arguments that it need only have a good-faith belief to

25  trigger a detention hearing under § 3142(f).  Relying more on a

26  competing body of caselaw rather than the text of the statute or the

27  sound policy reasons behind it, the magistrate judge accepted other

28  courts' interpretation that § 3142(f) "require[s] a finding of

'serious risk of flight' be supported by a preponderance of the evidence" to hold a detention hearing.  (Dkt. 66 at 4.)  But the caselaw relied upon ignores the plain text of the statute and simply assumes that because a judge must make a finding about detention under § 3142(e)(1) based on a defendant's risk of nonappearance by a preponderance of the evidence, that a judge must also make a finding about whether to hold a detention hearing under § 3142(f)(2)(A) based on a serious risk that a defendant will flee by a preponderance of the evidence also.  The statute does not support that interpretation.

Here, the magistrate judge primarily relied on United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988), to support her position that there is a two-step inquiry under §§ 3142(f) and 3142(g) to determine whether a detention hearing is first permitted and then ultimately detention.  In Friedman, the Second Circuit stated:

> After a motion for detention has been filed, the district court must undertake a two-step inquiry.  See United States v. Shakur, 817 F.2d 189, 194 (2d Cir. 1987).  It must first determine by a preponderance of the evidence, see United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987), that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice.  Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial.  United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir.), cert. dismissed, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).

Friedman, 837 F.2d at 49.

But _Friedman_ is not persuasive.  _Friedman_ relies on _Jackson_, which extended the preponderance-of-the-evidence burden to detain a defendant for risk of nonappearance under § 3142(e) to the standard for showing a serious risk that person will flee to trigger a detention hearing under § 3142(f) without any analysis whatsoever. _See Jackson_, 823 F.2d at 5 ("To order detention, the court must find by a preponderance of the evidence that the defendant presents a risk of flight, and, if it finds such a risk, that no conditions could reasonably assure the defendant's presence at trial.").  It did not seriously engage in any statutory interpretation or consider the alternatives.  Nor does the issue even appear to have been litigated by the parties.  Accordingly, _Friedman_'s authority on this issue is questionable.  _See Cooper Indus., Inc. v. Aviall Servs., Inc._, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").[2]

More importantly, other courts have disagreed with _Friedman_ and the proposed two-step process.  Indeed, even the Second Circuit itself suggested that the government is entitled to a detention hearing as long as it has a "good-faith belief" that it can meet the

---

[2] The majority of the caselaw cited in the release order suffers from these same issues, _see_ Dkt. 66 at 4-5: (1) they conflate the standards of preponderance of the evidence for risk of nonappearance to detain a defendant under § 3142(e) with the standard of a serious risk the defendant will flee to trigger a detention hearing under § 3142(f); (2) they rely on the limited analysis in _Friedman_; and (3) they do not seriously engage with the text of the statute.  They all assume the standard to trigger a detention hearing is a preponderance of the evidence.  Therefore, while somewhat more numerous, the government does not view these cases as particularly insightful to this question of statutory interpretation.

11

standard in 18 U.S.C. § 3142(f)(2).  Melendez-Carrion, 790 F.2d 984, 993 (2d Cir. 1986) ("The requisite 'grounds' for a detention motion should include specification of flight, dangerousness, or both, depending on the prosecutor's good-faith belief in the grounds that can be established.").  And the Eighth Circuit has also expressly rejected the court's proposed two-step approach here: "While we agree the government has the burden to show that the case 'involves' one of the circumstances defined in § 3142(f)(1) or (2), we have never held that a detention order may not be entered unless the judicial officer conducts the rigid 'two-step inquiry' urged by [defendant]."  United States v. Cook, 87 F.4th 920, 924 (8th Cir. 2023).  There are good reasons to reject this two-step inquiry, as explained in Cook, because "pretrial detention is an issue that should be resolved at the outset of the criminal case . . . [and] [d]elay either keeps a person in post-arrest detention that may be unnecessary, or keeps a person who should be detained prior to trial at large in the community."  Id.  Moreover, "[r]equiring the judicial officer to conduct a § 3142(f)(2)(A) hearing and then a second § 3142(e)(1) hearing is . . . both a waste of judicial resources and contrary to the Bail Reform Act's purposes" because "the two inquiries, while not identical, substantially overlap."  Id. at 924 (emphasis omitted).

The court's release order recognized some of these issues, including the conundrum that requiring the government to show that a serious risk that a person will flee under § 3142(f)(2)(A) by a preponderance of the evidence would subsume the same analysis of whether the person posed a risk of nonappearance by a preponderance of the evidence under § 3142(e), and potentially clash with the canon against surplusage.  See Dkt. 66 at 7.  Despite recognizing this, the

magistrate judge was concerned that "[i]f government need not make any affirmative showing at all, the gatekeeping provisions of section 3142(f) would be rendered essentially meaningless" when "Congress obviously intended to limit the circumstances where a detention hearing is warranted." Id. But "'vague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the specific issue under consideration.'" Montanile v. Board of Trs. of Nat'l Elevator Indus. Health Benefit Plan, 577 U.S. 136, 150 (2016) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 261 (1993)). And here the statute's text mandates the judicial officer hold such a hearing "upon motion of the attorney for the government." § 3142(f)(2)(A). The courts, of course, still maintain the ultimate check on the government's power to decide if detention is warranted. But there is no reason why Congress could not give this gatekeeping role to the government in the first instance.

The government recognizes that some courts have expressed concern that § 3142(f)'s gatekeeping provisions may be rendered meaningless if a judge is required to hold a detention hearing whenever the government moves because the government "basically need only check a box to trigger a detention hearing." See Dkt. 66 at 7; see also United States v. Subil, No. 2:23-CR-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023) (motion for detention "appears to be nothing more than a routine form consisting of blank spots to be marked next to conclusory recitations of statutory text that merely list the § 3142(f) categories"). But that is precisely what the statute demands. It is not for the courts to second guess the statute that Congress wrote. "The place to make new legislation, or address unwanted consequences of old legislation, lies in

13

Congress. . . . And the same judicial humility that requires [courts] to refrain from adding to statutes requires [courts] to refrain from diminishing them." Bostock v. Clayton County, 140 S. Ct. 1731, 1753 (2020). And as explained by the Second Circuit, it is unreasonable to assume that the government will simply assert that there is a "serious risk of flight" in every single case. See Melendez-Carrion, 790 F.2d at 993. Again, "[e]very lawyer has an obligation to file pleadings only in a good-faith belief that valid grounds exist for the relief sought," and the government understands the importance of that obligation in the context of detention decisions. Id.

Finally, it is worth noting the consequences of holding the government to a preponderance-of-the-evidence burden to trigger a detention hearing. Holding the government to a higher burden at the beginning would only cause delay. Congress mandated the detention hearing shall ordinarily "be held immediately upon the person's first appearance before the judicial officer." § 3142(f). If the government was held to a higher burden, then the government would routinely exercise its statutory right to a three-day continuance, while the government prepared to meet its heavy burden. See United States v. Dominguez, 783 F.2d 702, 704 (7th Cir. 1986) (noting that "the legislative history [of the Bail Reform Act] does suggest that the automatic continuances are available to facilitate preparation for a detention hearing"). This delay may keep a person detained unnecessarily, all in order to meet a heightened burden that the statute does not impose.

In short, the plain text of § 3142(f) does not impose the heighted standard that the court imposed. For good reason. The text and rationale behind § 3142 show that Congress intended a bar, albeit

a low one, before the government can argue for detention.  That bar is met when the government has a good-faith basis to believe that one of the categories of § 3142(f) is met.  The court erred in holding that the government must prove a serious risk that the person will flee by a preponderance in order to even argue that defendant poses a risk of nonappearance.  Therefore, the government respectfully request this Court to consider the issue de novo and find that the government's burden to trigger a detention hearing under § 3142(f)(2)(A) is its good-faith belief that a defendant poses a serious risk that he will flee.

**C.    The Court Should Find a Detention Hearing is Warranted Based on the Government's Motion and Order Defendant Detained**

Because the government has a good-faith belief that defendant poses a serious risk that he will flee, the government was entitled to a detention hearing in this case under § 3142(f)(2)(A).  The Court should either remand to the magistrate judge to hold this hearing or itself determine whether detention is warranted because "no condition or combination of conditions will reasonably assure the appearance of [defendant] as required."  18 U.S.C. § 3142(e)(1).  Notably, the magistrate judge's conclusion that there is not a "serious risk of flight" does not foreclose a finding that detention is warranted due to the risk of nonappearance.  That is because, in the magistrate judge's view, the "risk of flight" discussed in § 3142(f)(2)(A) "is

narrower" than the "risk of nonappearance" that determines whether detention is appropriate.  (Dkt. 66 at 8.)[3]

In this case, the record established that defendant is a foreign national with significant ties to China, including co-conspirators and family members living there as well as a history of sending large wire payments to China, as evidenced by the exhibit proffered at the detention hearing.  Within the past year and half, defendant's bank accounts received over a million dollars in suspicious and suspected fraudulent wires, which we believed to have been defrauded from elderly victims throughout the United States.  Indeed, Exhibit Six involved a police report from a Louisiana victim who was defrauded into sending money into a bank account that defendant controlled. Much of the money that defendant's accounts received went to China, but hundreds of thousands of dollars remained unaccounted.

Defendant is now charged with serious crimes and is alleged to have committed serious other ones, e.g., money laundering of wire fraud proceeds.  This alone shows that defendant has motive (to avoid significant jail time) and means (hundreds of thousands of dollars) to flee if he so chooses and is provided the opportunity.  Beyond that, there is the question of defendant's character and trustworthiness to U.S. Pretrial Services and the court.  Defendant's disclosures to U.S. Pretrial Services raise many questions. Defendant's reported work history omitted a purported real estate company in his name, one that he reported made significant money on bank applications.  He also failed to disclose bank accounts which

---

[3]  That conclusion itself is another reason why the magistrate judge's interpretation of § 3142(f)(2)(A) cannot be correct.  In the magistrate judge's view, the government must meet a <u>higher</u> standard to obtain a detention hearing than to actually obtain detention.

1   received significant sums of suspected fraudulent proceeds.  That

2   defendant failed to disclose this to U.S. Pretrial Services shows a

3   lack of candor with respect to his finances and employment, and is

4   further evidence of a serious risk of flight.  Finally, a large

5   amount of cash ($160,000) was found in the home that he shared with

6   co-conspirators.  This is an example of the unaccounted-for cash that

7   gives defendant the means to flee if given the opportunity.

8        The totality of these circumstances demonstrates that "no

9   condition or combination of conditions will reasonably assure the

10  appearance of [defendant] as required."  18 U.S.C. § 3142(e)(1).  At

11  a minimum, the government is entitled to a detention hearing under

12  § 3142(f)(2)(A) -- before the magistrate judge or this Court -- in

13  which it should have the opportunity to make this showing.

14  **V.   CONCLUSION**

15       For the foregoing reasons, this Court should conclude that the

16  government is entitled to a detention hearing under § 3142(f)(2)(A)

17  and either remand to the magistrate judge or itself analyze whether

18  detention is appropriate.

19

20  Dated: June 21, 2024              Respectfully submitted,

21                                    E. MARTIN ESTRADA
                                      United States Attorney
22
                                      CAMERON L. SCHROEDER
23                                    Assistant United States Attorney
                                      Chief, National Security Division
24

25                                       */s/ Andrew M. Roach*
                                      ANDREW M. ROACH
26                                    Assistant United States Attorney

27                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
28

17